Reese, J.
delivered the opinion of the court.
The general question in this case is, whether the conveyance of a negro man slave by Ballard to Jones, by a bill of sale, absolute on its face, was in fact, at the time and by the intention of the parties, a contract of sale or of mortgage. The legal principle in such-case is well settled, that, to make out a contract of mortgage, the proof, whether positive or arising from circumstances, must be fully satisfactory. Let us, then, look into the circumstances of the parties and at the property at the time of the contract. From the proof on all sides, the slave was one of peculiar value, worth not less than a thousand dollars; he had been brought up from infancy with the complainant, who was a young man, and they were reciprocally attached to each other; the slave had been mortgaged to a person in the neighborhood for the sum of $325, and was in his. possession, and, as complainant believed, about to be lost to him. Complainant kept a grocery, and lived in the family of defendant, and they were on terms of much confidence and friendship. Jn this state of things, complainant, for the purpose of redeeming the slave, applied to the defendant for a loan of three hundred and twenty-five dollars — this fact is admitted by the answer— that sum was advanced to him, and the slave redeemed. After this the bill of sale was made. It acknowledges the payment of a consideration of eight hundred dollars. As we have said, if it had been the purpose of complainant to have sold the slave, he could readily have sold him for a thousand dollars. Such was not his purpose — this the answer admits; for the defendant therein says, that the complainant insisted *457 that the conveyance should he a mortgage; this defendant would not agree to. The complainant, then, the answer says, spoke at the time of re-purchasing the slave and defendant told him, if they could agree upon the price, that he would as soon sell to him as another. The answer does not pretend that at this time any thing more than the three hundred and twenty-five dollars was advanced, or that any security was given to complainant for the balance of the consideration, which it alleges was subsequently paid in boarding complainant, in hauling goods for him, in money advanced for him to others, &c. The slave, as we have said, was worth and would have brought a thousand dollars, and would have hired at least for a hundred dollars per annum. Is it probable, then, that the complainant would have sold such a slave for the sum of $325, all of it paid to the other mortgagee, and for 475 more, to be paid subsequently in hauling, boarding, &c., and take no security therefor? These circumstances, and the confidence and friendship between the parties, distinctly point, not to a sale, but to a pledge of the property of some sort. The attesting witnesses to the bill of sale, who seem to be plain, perhaps ignorant men, were not informed of the contents of the instrument they attested, yet one of them, struck by the incidents and accompaniments of the transaction, took the complainant aside and admonished him, telling him he would trust no man as complainant was trusting defendant. In addition to these immediate attendant circumstances, it is proved by ¡several witnesses that defendant, subsequently, and on many occasions, distinctly admitted that the arrangement between him and complainant was, that when the complainant paid him back the money advanced to him, he was to have his slave; to another witness, he stated expressly that he did not care how long complainant might omit to redeem the slave, if it were even ten years, for he had advanced but three hundred and twenty-five dollars, and was receiving the labor of the slave, in the mean time, for about twenty dollars a year. When the negro subsequently ran away, and his loss was spoken of by two of his neighbors, on different occasions, as amounting to eight hundred dollars, he said to each it was not near so much as they might *458 suppose. To others he spoke of the loss as falling in part upon him and in part upon complainant. The above circumstances and proof make a most unquestionable case of mortgage; and, if there had been nothing on the other side, the case would not have deserved discussion. But, the bill of sale not being registered promptly, a creditor of complainant’s levied upon the slave, and there were other creditors of his; to these, and about this time, the complainant and the defendant alike represented the transaction as a sale. This was done to protect the property, and may have been a fraudulent use of the existing conveyance; but we do not feel disposed to rely upon these conversations, made with such a purpose, to show that the transaction was" in fact a sale and not a mortgage. Nor will this attempt to make a fraudulent use of the conveyance, after it came into existence, participated in by the defendant, repel the complainant from the relief he seeks against him.
But, although these conversations of complainant will not be held to repel the complainant as between him and Jones, yet, we think they ought to have such effect as between him and Ingram, who purchased from Jones.
The bill as to Ingram will be dismissed, and the decree of the chancellor, in other respects, be reversed, and an account upon the footing of mortgage be taken between complainant and defendant.